IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMMIE SUE CASPER, | ) |
| Claimant, | ) Case No. 17 C 199 |
| v. | ) Magistrate Judge Jeffrey T. Gilbert |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>performing the duties and functions<br>not reserved to the Commissioner<br>of Social Security, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Tammie Sue Casper ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. Section 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 13.] The parties have filed opposing briefs in support of and in opposition to the Commissioner's decision [ECF Nos. 17, 24], which the Court will construe as cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Claimant's Motion [ECF No. 17] is granted, and the Commissioner's Motion [ECF No. 24] is denied. This matter is remanded for further proceedings consistent with the Court's Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

On November 4, 2009, Claimant filed an application for DIB and SSI, alleging a disability onset date of January 1, 2007. (R. 181, 494, 579.) Through her attorney, Claimant amended her alleged onset date to December 2, 2009. (R. 181.) Claimant's application was denied, initially on May 7, 2010, then upon reconsideration on November 8, 2010, and again after a hearing before an Administrative Law Judge ("ALJ") in a decision dated January 23, 2012. (R. 181, 174, 176.) Claimant had a right to further review of that adverse decision, and she exercised that right.

### A. Claimant's First Request for Review

Claimant requested review by the Appeals Council ("AC"), which remanded the matter to the ALJ for further reconsideration on May 2, 2013. (R. 199–203.) The ALJ held a second hearing on March 17, 2014 (hereafter "2014 ALJ Decision"). (R. 87–125.) Plaintiff was represented by counsel and medical experts, Carl Leigh, M.D. and David Biscardi, M.D., and Aimee Mowery a vocational expert, also testified at the hearing. (*Id*.) The ALJ issued a partially favorable decision on August 18, 2014. (R. 204–226.) At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since December 2, 2009, the date Claimant became disabled. (R. 212.) At step two, the ALJ determined that Claimant, from December 2, 2009 through November 20, 2011, had the following severe impairments: status post open reduction and internal fixation of left ankle and left elbow fractures, obesity and a mood disorder. (*Id*.) At step three but before step four, the ALJ determined Claimant had the RFC to perform light work as defined by the regulations with restrictions and could never climb ladders, ropes or scaffolds; and could only occasionally climb ramps or stairs, stoop, crouch, kneel, crawl and operate foot controls with the left lower extremity; Claimant could frequently

reach with left upper extremity. Claimant needed to avoid concentrated exposure to extreme cold and heat. Claimant needed to avoid even moderate exposure to vibrations. Claimant needed to avoid all exposure to unprotected heights and dangerous moving machinery; Claimant needed to avoid all exposure to slippery surfaces and uneven terrain; work limited to simple and routine tasks involving no interaction with the public in the work setting and only occasional interaction with co-workers. Due to mental impairments during the period of December 2, 2009 and November 20, 2011, Claimant could not sustain the concentration, persistence and pace to remain on task 85% or more of the time during an eight hour work period. (R. 213.) At step four, the ALJ determined from December 2, 2009 through November 20, 2011 Claimant was unable to perform any past relevant work. (R. 215.) At step five, the ALJ determined there were no jobs that existed in significant numbers in the national economy that Claimant could have performed from December 2, 2009 through November 20, 2011. (R. 216.)

**B. Claimant's Second Request for Review and AC Remand Order**

Claimant again requested review by the AC, which again remanded the matter on August 20, 2015, this time requesting a different ALJ for further consideration. (R. 229–232.) The AC remanded the case for resolution of two issues: First, the ALJ's 2014 decision did not contain an evaluation of the testimony given by the medical expert, Dr. Leigh, , who testified that Claimant could stand and or walk for a maximum of three hours in an eight hour work day. (R. 230.) The AC determined that some evaluation of this testimony was necessary. (*Id*.) Second, the ALJ's 2014 decision did not contain an adequate evaluation of the non-examining source opinion provided by Vidya Madala, M.D., who completed a Physical Residual Functional Capacity Assessment (Exhibit 6F) and opined that Claimant could stand and or walk for "at least 2 hours

in an 8-hour workday." (*Id.*) The AC again stated that further consideration of this non-examining source opinion was necessary. (*Id.*)

The AC directed that, on remand, the ALJ was to (1) further evaluate Claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms under 20 C.F.R. 404.1529, 416.929 and SSR 96-7p; and (2) give consideration to the non-examining source opinions pursuant to the provisions of 20 C.F.R. 404.15(e) and 416.927(e) and SR 96-6p, and explain the weight given to such opinion evidence. (R. 231.) Additionally, the ALJ was to give further consideration to Claimant's maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. (20 C.F.R. 404.1545 and 416.945, SSR 85-16 and 96-8p.) If warranted by the expanded record, the ALJ also was to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Claimant's occupational base. (SSR 83-14.) The AC directed that the hypothetical questions should reflect the specific capacity and limitations established by the record as a whole. In addition, the ALJ was directed to ask the vocational expert ("VE") to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1566 and 416.966). Further, before relying on the VE evidence, the ALJ was to identify and resolve any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations (SSR 00-4p). (R. 231.)

### C. The ALJ's Decision on Remand

The new ALJ held a third hearing on February 9, 2016. (R. 38–86.) Claimant was represented by counsel. She appeared and testified and a medical expert, James McKenna, M.D.,

4

and vocational expert, Aimee Mowery, also testified at Claimant's third hearing. On February 23, 2016, the ALJ then presiding over the case again denied Claimant's application for DIB. (R. 18–37.) This opinion also followed the five-step sequential evaluation process required by the SSRs. 20 C.F.R. Sec. 404.1520. At step one, the ALJ determined that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 21, 2011. (R. 23.) At step two, the ALJ determined that Claimant suffered from the following severe impairments: major depressive disorder, history of post-traumatic stress disorder, status post open reduction and internal fixation of left ankle fracture, history of left elbow fracture with chronic stiffness, and obesity. (*Id*.) At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) Between step three and four, the ALJ determined Claimant had the RFC to light work involving: simple tasks with no public contact or more than occasional contact with peers and supervisors; sitting, standing and/or walking up to 6 hours in an 8 hour work day; no more than frequent: balancing, handling and reaching with the left non-dominant left upper extremity; occasional: overhead reaching with the left upper extremity, short ladder climbing (5-6 steps), stair and ramp climbing, stooping, kneeling, crouching and crawling; in a work environment exclusive of: any long ladder, rope or scaffold climbing requirements, even moderate exposure to extreme heat, cold or vibration, hazards such as unprotected heights or dangerous moving machinery or slippery surface and uneven terrain or a fast paced production environment. (R. 25.)

At step four, the ALJ determined Claimant was unable to perform any past relevant work. (R. 28.) Finally, the ALJ determined that considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy

that Claimant could have performed, including marker, sorter, and label coder. (R. 29.) For these reasons the ALJ found Claimant was not disabled from November 21, 2011 through the date of the decision. (*Id.*)

Claimant once again requested review by the Appeals Council. This time, the AC issued a decision, on November 8, 2016, granting Claimant SSI benefits, but denying review in regards to DIB, making the ALJ's 2016 hearing decision the final decision of the Commissioner. (R. 1–5). Claimant seeks review in this Court pursuant to 42 U.S.C. section 405(g); *Spraggins v. Berryhill*, 2017 WL 4169749 (N.D. Ill. 2017).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision, *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant asserts several errors on appeal: (1) the ALJ failed to properly discuss previous medical opinions; (2) the ALJ failed to properly consider Plaintiff's maximum physical and mental RFC, while also failing to consider her impairments in combination; (3) the ALJ's evaluation of her subjective statements was flawed; and (4) the ALJ failed to properly assess the effects of Plaintiff's limitations on her occupational base. Additionally, Claimant argues that these errors also violated the AC's remand order.

**A. The ALJ's Failure to Properly Discuss Previous Medical Opinions**

Claimant makes three arguments regarding the ALJ's assessment of Dr. Leigh and Dr. Madala's opinions. First, Claimant argues that the ALJ did not adequately explain what later record evidence justified giving Dr. Leigh's opinion less weight. [ECF No. 17, at 8.] Next, Claimant argues that the ALJ did not provide an adequate evaluation of Dr. Madala's opinion.

7

[ECF No. 17, at 9.] Third, Claimant argues that the ALJ failed to follow the AC's remand order by not discussing properly Dr. Leigh's and Dr. Madala's opinions. (R. 230.)

### 1. Dr. Leigh's Opinion

Claimant argues that by simply concluding that Dr. Leigh's opinion was entitled to less decisional weight due to later record evidence is insufficient. [ECF No. 17, at 8.] The Court agrees. Here, the ALJ acknowledges that Dr. Leigh testified in the previous hearing that Claimant would be limited to standing and or walking for no more than 3 hours in an 8-hour work day. (R. 27.) The ALJ follows up this statement with, "Dr. Leigh's opinion is given less decisional weight is due to later recorded evidence." (R. 27.) The Court is then left wondering what later recorded evidence the ALJ is referring to and how that outweighs the findings made by Dr. Leigh. *See Boiles v. Barnhart,* 395 F. 3d 421, 425 (7th Cir. 2005) ("The ALJ is required to 'articulate, at some minimum level, [her] analysis of the evidence.'") (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

In the hearing held on March 17, 2014, Dr. Leigh testified about Claimant's medical impairments and functional limitations in the work setting. (R. 108–114.) Dr. Leigh testified that Claimant would be limited to standing and or walking a maximum of three hours out of an eight-hour workday. (R. 111.) Dr. Leigh also testified that in regards to Claimant's left upper extremity, she would be limited to reaching overhead occasionally, reaching forward or laterally frequently, and gross manipulation or handling would also be limited to occasionally with the left. (*Id*.) Dr. Leigh further testified that the basis for his opinion regarding a three-hour limitation on standing or walking was Claimant's status-post fracture of the left ankle. (R. 112.) Specifically, Dr. Leigh testified that Claimant's two fractures and his physical findings that Claimant had great difficulty with heal walking, toe walking, and squatting, even though

Claimant's gait was non-antalgic, also contributed to his opinion. (*Id.*) Dr. Leigh stated that he was aware of the differences between his RFC and the RFC laid out in Exhibit 15F, which he attributed to 15F being "inaccurate and sloppy." (*Id.*)

In her decision, the ALJ points out that the ME who testified in the most recent 2016 hearing, Dr. McKenna, based his review on Claimant's most current medical record, but that does not excuse the absence of any analysis of Dr. Leigh's opinion. (R. 27.) This is especially important when Dr. Leigh's and Dr. McKenna's testimony involved conflicting opinions to a pivotal issue -- Claimant's limitations for durational sitting and standing. Not only did the ALJ fail to address Dr. Leigh's opinion in any substantive fashion, but the ALJ also neglected to discuss the limitations mentioned by Dr. McKenna. At the hearing, Dr. McKenna testified that he did not believe there was enough evidence to limit Claimant to standing and walking for less than six out of eight hours as opined by Dr. Leigh. (R. 56–57.) When the record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict, and cannot simply ignore it. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). While it is the ALJ's responsibility to resolve conflicting medical evidence, his method of doing so must be reasonable and adequately explained. *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 849 (N.D. Ill. 2006). The ALJ failed to meet this standard here.

### 2. Dr. Madala's Opinion

Claimant argues that the ALJ failed to mention Dr. Madala's 2010 Physical Residual Functional Capacity Assessment. [ECF. No 17, at 9.] Although it is true that the ALJ did not explicitly name Dr. Madala in her decision, she did refer to the 2010 Physical Residual Functional Capacity Assessment, albeit very briefly. (R. 27.) The ALJ stated that this 2010 determination was given less decisional weight because it was made on May 6, 2010 and "later

recorded evidence pertinent to the period at issue does not support these restrictions." (*Id*.) Once again, the ALJ fails to indicate *what* later recorded evidence she is referring to and how and why it does not support the restrictions listed by Dr. Madala. Because the ALJ failed to minimally articulate the evidence she was relying on and how it outweighed the evidence favorable to Claimant, the Court is unable to determine that the ALJ's decision is based on substantial evidence. An ALJ is not required to "specifically address every piece of evidence" as long as she builds a logical bridge from the evidence to her conclusion. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Here, there is no bridge between the evidence and the ALJ's conclusion that the Court can sufficiently rely on with respect to Dr. Madala..

### 3. Failure to Follow Remand Instructions

The Court agrees with Claimant that by failing to adequately discuss Dr. Leigh or Dr. Madala in her opinion, the ALJ's decision failed to follow the AC's remand instructions.

The most pertinent portion of Dr. Leigh's opinion that the AC wanted the ALJ to consider was the statement regarding whether or not Claimant would be limited to standing or walking for a maximum of three hours in an eight-hour workday. (R. 230.) Similarly, the relevant portion of Dr. Madala's assessment that the AC wanted the ALJ to discuss was her finding that Claimant could stand and or walk for "at least 2 hours in an 8-hour work days." (R. 230, 851.) The AC stated that a discussion regarding both of these non-examining opinion sources was necessary. (R. 230.) Given the AC's direction , it is puzzling why the ALJ chose to not discuss those issues, especially when they directly contradict opinions upon which the ALJ chose to rely on.

The ALJ's failure to address these issues, which as discussed above necessitates yet another remand in this case, is extremely frustrating. Claimant's application for disability

benefits was filed more than eight years ago. She is entitled to an orderly and timely review process, and to assume that an ALJ will follow the direction of the AC on remand rather than simply ignore it. To be sure, a claimant is not entitled to a favorable decision. But she should be entitled to assume that the authorities will review her application according to law both substantively and procedurally. The Court is not prepared to preempt the orderly review process at this juncture. But case law also exists for the proposition that "[t]he Commissioner is not entitled to 'endless opportunities to get it right." *Byers v. Astrue*, No. 1:08-cv-1174–DFH–JMS, 2009 WL 3246617 (S.D. Indiana, Oct. 5, 2009) (quoting *Seavy v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001)).

### B. The RFC Determination

Claimant next argues that the ALJ's determination that Claimant had the RFC to perform the full range of light work failed to take into account the full effect of Claimant's impairments in combination. [ECF No. 17, at 9–11.] Claimant also argues that the ALJ's RFC determination is flawed in regards to Claimant's mental RFC and her limitations in concentration, persistence or pace. [ECF No. 17, at 11–13.]

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do de-spite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v.*

*Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

An ALJ is required to consider the aggregate effect of a Claimant's impairments in determining whether the claimant is disabled under the Social Security Act. *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual [is disabled], the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."); 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity ... we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Thus, even if none of a claimant's impairments in isolation are disabling, the combined effect of her impairments may nonetheless cause her to be disabled. *Id*.

Given that the case is being remanded for other reasons as discussed above, the Court need not resolve Claimant's arguments regarding the ALJ's RFC determination and Claimant's alleged physical and mental limitations. On remand, the ALJ should consider what affect Claimant's physical impairments in combination may have had on her ability to work, and if the

ALJ concludes that Claimant's combination of impairments did not affect her, then the ALJ explicitly should explain how he/she reached that conclusion. Likewise, the ALJ should consider and evaluate any mental limitations in concentration, persistence or pace as necessary and explicitly explain his/her evaluation and conclusion. The ALJ need not accept Claimant's arguments, but if he/she does not, the ALJ must state why citing evidence in the record.

### C. The Credibility Determination

Claimant also argues that the ALJ erred in evaluating her subjective symptom statements and credibility. [ECF No. 17, at 13–14.] The Court agrees because the ALJ did not make an explicit credibility determination in her opinion. Given that the case is being remanded for other reasons, the ALJ should make an explicit credibility determination and make clear in her opinion how she evaluated the testimony of Claimant and any witnesses who testified at the hearing, as well as indicating what weight should be given to the testimony in light of the objective evidence in the record.

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[1] Although an ALJ's

---

[1] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. See SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain assertions by applicants, especially as such *assertions* often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued her opinion on February 26, 2016. (R. 30.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). Because the ALJ's credibility determination falls short of these requirements, the Court also finds that the ALJ's credibility determination is not supported by substantial evidence.

It appears that the ALJ did not believe, or at a minimum did not credit, Claimant's testimony. For example, the ALJ describes progress notes obtained after the second remand as being "largely unremarkable," and dismisses a 2010 State Agency Determination regarding reaching and handling limitations because "later recorded evidence pertinent to the period at issue does not support these restrictions". (R. 26.) The ALJ is also dismissive of Claimant's testimony, stating, for example, that "claimant further testified that she needed to rest her elbow 20 minutes per day, [but] there is no indication in the relevant longitudinal treatment record that she ever told her doctor this." (R. 27.) It is not clear that Claimant's purported failure to tell her doctor that she needed to rest her elbow for 20 minutes each day (or the doctor's failure to record such a statement, if made, in any progress note) undercuts the credibility of Claimant's testimony at the hearing. It is statements like this that cause the Court to view the ALJ's credibility analysis as falling short of what is required to build a logical bridge to her conclusion that she did not credit Claimant's testimony because it was contrary to the objective medical evidence.

The Social Security Regulations and established case law require an ALJ to explain explicitly why she does not find testimony credible. SSR 96-7p. The Seventh Circuit has also repeatedly held that a credibility determination may be reversed if the ALJ fails to explain

adequately her credibility finding by discussing specific reasons supported by the record. *See Craft*, 539 F.2d at 678 (a credibility finding "must be specific enough to enable the claimant and a reviewing body to understand the reasoning") (citation omitted). The ALJ's credibility analysis in this case falls short of these well-established requirements.

### D. Other Issues

Claimant argues that the ALJ did not present the appropriate questions to the VE at the hearing, and as a result, improperly relied on the VE's testimony. [ECF No. 17, at 14-15.] However, since a proper RFC determination is yet to be determined, the Court is unable to properly consider this argument at this time.

### IV. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 17] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 25] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 13, 2018